**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

RICHARD B. PHINNEY,

    An individual,

Plaintiff.

v.

CITY AND COUNTY OF DENVER,
DEPARTMENT OF FINANCE

    A municipal government entity,

Defendant.

___

**COMPLAINT AND REQUEST FOR JURY TRIAL**
___

Richard B. Phinney [Phinney], Plaintiff, through his attorney, Steven L. Murray of Murray Law, LLC, submits his Complaint and Request for Jury Trial against Defendant, the City and County of Denver, Department of Finance [collectively referenced as the City or Defendant].

### I. INTRODUCTION

1. Richard Phinney, a male, is sixty-five years of age.

2. Defendant employed Phinney for over twenty-five years, from October 10, 1996, through March 22, 2022.

3. At the time of the events in issue, Phinney served as a Real Estate Appraisal Specialist, Department of Finance.

4. This case is a retaliation and employment discrimination action under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. §§ 2000e *et seq*.

5. Title VII prohibits local government employees from being subjected to unlawful retaliation and discrimination based on religion.

6. Phinney seeks legal and equitable relief for Defendant's intentional and unlawful retaliation against him.

7. Defendant retaliated against Phinney by taking material adverse actions against him because of his lawful participation in protected equal employment opportunity activities, meaning – his requests for reasonable accommodations based on religion to Defendant's COVID-19 vaccine mandate and testing requirements and his opposition to unlawful conduct under Title VII, Defendant's discrimination against him.

## II.  PARTIES

8. Phinney is a United States citizen and resident of the City and County of Denver, Colorado.

9. Defendant, the City and County of Denver, is a municipal government entity conducting business in Denver, Colorado.

10. Phinney worked for Defendant in Denver, Colorado.

11. At all times in issue, Phinney and Defendant conducted business within this Court's Judicial District.

### III. JURISDICTION AND VENUE

12. Jurisdiction is asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, 2000e-5, and 2000e-5(f)(1)(3), as amended, and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

13. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3)(4).

14. Phinney served as an employee of Defendant under Title VII.

15. The Defendant is an employer under Title VII.

16. The claims and conduct in issue arose in the Judicial District of this Court, including all alleged unlawful employment practices.

17. Venue is proper in this Court under 28 U.S.C. §§ 1391(a)(1), (b)(1)(2), (c)(2), and 42 U.S.C. § 2000e-5(f)(3).

### IV. ADMINISTRATIVE PROCEDURES

18. Before filing this action, Phinney timely, properly, and lawfully exhausted all required administrative prerequisites, procedures, and remedies.

19. Phinney filed a timely charge of retaliation and religious discrimination, asserting violations of Title VII, with the United States Equal Employment Opportunity Commission. [EEOC] [Charge No. 32A-2022-00458].

20. On December 16, 2022, the EEOC issued a Notice of Right to Sue letter concerning Phinney's EEOC charge.

21. This action is timely filed because it is filed within ninety days of Phinney's receipt of the Notice of Right to Sue letter.

## V. GENERAL ALLEGATIONS

### A. Overview

22. Defendant constructively discharged Phinney from employment on or about March 22, 2022.

23. Phinney resigned his employment because Defendant subjected him to an intolerable work environment through a series of increasingly severe, retaliatory actions that jeopardized his financial security, employment status, and professional career.

24. During Phinney's service with Defendant, he maintained positive, supportive relationships with his supervisors.

25. Phinney was an outstanding performer and leader with Defendant.

26. Keith Erffmeyer, Denver Assessor, was Phinney's direct supervisor.

27. On August 25, 2021, Erffmeyer complimented Phinney's work on a recent assignment, stating:

> Rich, just wanted to congratulate you and thank you for your work on this one. It is very much appreciated after a very contentious negotiation and hearing process. **You are an excellent appraiser, and this reinforces it in my mind.** [emphasis supplied].

28. On February 7, 2022, Defendant issued Phinney a Notification of Contemplation of Disciplinary Action, and thereafter, issued a decision suspending him for 80 hours. [Notice].

29. Defendant issued the Notification following Phinney's protected activities and his protected opposition to conduct made unlawful under Title VII.

30. Defendant's alleged reasons for suspending Phinney included missing a

4

minimal number of tests for his required COVID-19 testing and failing to properly "upload" his test results under his reasonable accommodation based on religion to the COVID-19 vaccine mandate.

31. Phinney did not violate the terms of his reasonable accommodation.

32. Defendant's actions effectively destroyed Phinney's career with the City.

33. Because of Defendant's actions, Phinney suffered emotional and physical distress, humiliation, and losses of wages and contributions to his retirement/pension plan.

34. Defendant's cumulative actions resulted in Phinney's unlawful retaliatory and discriminatory constructive discharge.

### B. Vaccine Mandate and Requests for Reasonable Accommodation

35. On August 2, 2021, and September 1, 2021, the Denver Department of Public Health and Environment issued a public health order requiring all City employees to be fully vaccinated against COVID-19 by September 30, 2021.

#### 1) *First Request re: Vaccine*

36. On August 10, 2021, Phinney submitted his first request for a reasonable accommodation based on religion.

37. Phinney's first request for a reasonable accommodation was protected activity under Title VII.

38. Phinney requested a reasonable accommodation to Defendant's COVID-19 vaccine mandate and testing procedures.

39. In Phinney's first request, he explained the two parts of his sincerely held religious beliefs and opposition to Defendant's COVID-19 vaccine mandate and testing requirement.

40. As of August 10, 2021, Defendant knew Phinney's specific, sincerely held religious beliefs.

### 2)   *Defendant's Response to Phinney's First Request re: Vaccine*

41. Defendant did not grant Phinney's first request for a religious accommodation.

42. On August 14, 2021, Defendant responded to Phinney's request for a reasonable accommodation to the COVID-19 vaccine mandate and testing procedures.

43. In Defendant's response on August 14, 2021, Defendant submitted three requests to Phinney after learning of his religious beliefs. [Religious/Vaccine questions].

44. Defendant requested Phinney to: "Please identify, with a simple yes or no, whether you have received any of the following vaccinations: chickenpox, rubella, measles, mumps, hepatitis A or B, shingles, smallpox, polio, or polio combination. . .."

45. Also, Defendant asked Phinney to: "explain the nature and scope of your religious belief and the source of the belief."

46. Moreover, Defendant asked Phinney: "Have any of the religious organizations in which you participate stated that the COVID vaccine violates their doctrines?"

47. The three Religious/Vaccine questions infringed on Phinney's religious faith, beliefs, and medical privacy.

48. The three Religious/Vaccine questions were beyond the scope of the test for determining Phinney's sincerely religious beliefs as part of his request for a reasonable accommodation based on religion under Title VII.

49. The three Religious/Vaccine questions were beyond the scope of the complete test/analysis for determining Phinney's request for a reasonable accommodation.

50. The three Religious/Vaccine questions were submitted to Phinney only after he: (1) explained his sincerely held religious beliefs to Defendant; and (2) he engaged in protected activity by requesting a religious accommodation to the vaccine and testing mandates.

### 3)     Second Request re: Vaccine

51. On August 31, 2021, Phinney, through legal counsel, submitted his second request for a reasonable accommodation based on religion to Defendant's COVID-19 vaccine mandate and testing procedures.

52. Phinney's second request for a reasonable accommodation was protected activity under Title VII.

53. In the above August 31, 2021, submission, Phinney stated it was protected activity under Title VII and explained that any materially adverse employment action against Phinney for submitting the request would provide the basis for a retaliation claim under Title VII.

54. In the second request, Phinney requested he not be subject to any job requirement mandating he take any vaccine or be subject to any medical testing, including but not limited to the COVID-19 vaccines and tests.

55. The second request explained that Phinney's devout, sincerely held religious beliefs supported his request for an accommodation.

56. The second request restated the parts of Phinney's sincerely held religious beliefs he had provided to the City in his first request.

57. The second request set forth the Title VII legal principles for religious discrimination and a reasonable accommodation based on religion, including the proper inquiry for determining whether Phinney held sincerely held religious beliefs.

58. The second request explained that during the pandemic, Phinney contracted COVID-19, and he had recovered from the virus.

59. Phinney's accommodation request was reasonable.

60. The second request stated the City would suffer no undue burden by providing Phinney with the requested accommodation.

61. Phinney's request outlined four points concerning the requested accommodation.

62. First, Phinney would work from his home. During the pandemic, he worked from his home and performed all his duties in an exemplary way.

63. Second, Phinney would only enter the office when necessary or when directed by his supervisors. When he was in the office, he would wear a mask and practice social distancing.

64. Third, the City would not require Phinney to take any COVID-19 vaccine or any medical test.

65. Finally, the City would not discipline or take any adverse material action against Phinney because of: (1) his religious position on vaccines and physical testing; or (2) his requests for a religious accommodation.

66. The second request stated the Religious/Vaccine questions: (1) infringed on Phinney's faith, medical and religious privacy; (2) were beyond the scope of the test for a religious accommodation; and (3) were proffered only after Phinney engaged in protected activity. For these reasons, Phinney did not answer the questions.

67. On September 13, 2021, Phinney engaged in protected activity under Title VII, through counsel, by requesting a reasonable accommodation based on religion concerning the Covid-19 testing requirement.

68. On September 28, 2021, Defendant denied Phinney his request for an accommodation to the COVID-19 test based on religion, stating: "The City disputes that objections to testing are a sincerely held religious belief."

69. On September 29, 2021, Phinney engaged in protected activity under Title VII through his attorneys, clarifying his request for a religious accommodation from the City's COVID-19 testing procedures, and explaining the submission was protected Title VII activity, thereby prohibiting retaliation against Phinney.

**C.  Reasonable Accommodation re: Vaccine**

70. Defendant granted Phinney a reasonable accommodation to the vaccine mandate.

9

71. Phinney's accommodation to the Covid-19 vaccine included these conditions: (1) starting October 1, 2021, he was required to obtain a COVID-19 test at a testing site; (2) upload his test results through his Workday[1] inbox; and (3) wear a face covering whenever he was at work and maintain at least six feet of physical distance from others.

### D. Defendant Administered Phinney's Accommodation in a Discriminatory and Retaliatory Manner

72. On or about November 15, 2021, Patricia Anderson, Defendant's Senior HR Business Partner, alleged to Phinney he failed to timely upload his results for a specific date.

73. On the same day, November 15, 2021, Phinney responded to Anderson:

> My compliance has been super adequate. An array of these results will show that I have not failed to test at least every five calendar days. The schedule which you sent to me includes test date which fall on Sundays. **Tests are not** available on Sundays**.** [Emphasis original].

74. On November 19, 2021, Defendant and Anderson first informed Phinney he needed to upload his results by 11:59 p.m.

75. On January 20, 2022, Defendant and Anderson: (1) alleged to Phinney he submitted his most recent COVID-19 test result with a collection date that exceeded five days from the date of his previous submission; and (2) stated to Phinney that his alleged failure to abide by the accommodations may result in discipline up to and including dismissal.

76. Defendant's threat of further discipline up to and including dismissal created fear in Phinney for his financial and job security, including fear of continued discipline

---

[1] Workday is a Human Resource application.

10

leading to dismissal and harm to his professional career.

77. In response to Defendant's January 20, 2022, message, Phinney expressed his confusion and frustration to the changing requirements by stating:

> Either you are going to publish and stick to a schedule, or you are not. So far you have not. You have not published a revised schedule after the holiday alterations (two of these). So, I will continue to test every five days (save but for this week, a holiday week where testing was unavailable).

78. Phinney worked in a cooperative, honest, and good-faith manner to follow Defendant's COVID-19 testing requirements.

79. Phinney repeatedly worked to resolve all issues with Defendant and Anderson.

80. Phinney's supervisor, Keith Erffmeyer, Denver Assessor had no objection or complaint to the way Phinney was performing the conditions of his accommodation.

81. Phinney reached out to Erffmeyer to assist him in the continuing dispute with Defendant and Anderson.

82. Concerning Defendant and Anderson, Erffmeyer informed Phinney, with words to the effect, "they are coming for you."

83. Phinney never engaged in any bad faith, intentional, or insubordinate violation of any part of his accommodation to the vaccine.

84. Defendant provided Phinney with a calendar including dates for testing. This calendar included test dates on Sundays and holidays. For example, the calendar included a testing date on Christmas Day, December 25, 2021.

85. Defendant's allegations were based on unclear, confusing, and arbitrary standards.

86. Defendant and Anderson:

(1) Did not provide Phinney with any guidance or training on the testing and upload standards.

(2) Imposed arbitrary standards in administering the accommodation and asserting violations of the accommodation conditions.

(3) Did not provide Phinney with direct answers to his questions.

(4) Did not provide Phinney clear and consistent guidance on what he should do if a testing date fell on a Sunday or holiday.

(5) Did not provide Phinney clear and consistent guidance on what he should do if he tested early – meaning, before a testing date which fell on a Sunday or holiday.

(6) Did not provide Phinney with clear and consistent guidance if he took duplicate tests because of his confusion about the test date and task date.

(7) Did not provide Phinney with clear and consistent guidance about the test date, the Workday task "assignment date," the requested test date to be uploaded, or instructions as to how to upload the correct date.

(8) Misstated Phinney's conduct internally with Defendant about Phinney's alleged failure to return Anderson's telephone calls.

(9) Were careless in administering Phinney's accommodation, for example, they sent him accommodation information for a separate employee.

### E. Notification of Contemplated Disciplinary Action

87. On February 7, 2022, Defendant issued a Notification of Contemplated Disciplinary Action to Phinney. [Notice].

88. The Notice was a material adverse action under Title VII.

89. The Notice provided:

> This is official notification that disciplinary action is being contemplated for alleged misconduct that may violate the following Career Service Rules:
>
> 16-28, Grounds for Discipline
>
> The following **may be cause for the discipline or dismissal** of a Career Service employee. . ..

90. The Notice and threat of further discipline up to and including dismissal created fear in Phinney for his financial and job security, including fear of continued discipline leading to dismissal and harm to his professional career.

91. The Notice alleged Phinney had not complied with the conditions of his accommodation because he missed COVID-19 tests and did not upload his results properly.

92. The Notice included careless and inaccurate allegations.

93. Phinney, through his counsel, submitted his written response to the Notice on February 22, 2022.

94. Phinney's response to the Notice was protected activity under Title VII because it objected to the Notice as unlawful retaliation under Title VII.

95. Phinney's response outlined Defendant's careless and inaccurate allegations based on unclear, confusing, and arbitrary standards.

96. Phinney respected the rules governing the COVID-19 testing requirements.

97. Phinney did not engage in any bad-faith, intentional violation of the rules.

98. Phinney's twenty-five-year employment record supported no penalty or a minimal penalty.

### F.  Suspension Decision

99. On February 28, 2022, Defendant suspended Phinney for 80 hours.

100. On March 3, 2022, Phinney, through counsel, submitted his Request for Reconsideration of the Decision to Suspend on Notification of Contemplation of Disciplinary Action.

101. As a direct, foreseeable, and proximate result of Defendant's unlawful, intentional discrimination and retaliation, Phinney suffered compensatory damages, injuries, and losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

102. As a direct, foreseeable, and proximate result of Defendant's unlawful, intentional discrimination and retaliation, Phinney suffered economic damages and losses, including potential earnings, wages, income, benefits, diminution of earning capacity, actual and/or potential retirement benefits, and future pecuniary losses.

## VI. CLAIM FOR RELIEF

### FIRST CLAIM

### [Unlawful Retaliation in Violation of Title VII]

103. Phinney incorporates and restates all allegations previously asserted as though incorporated.

104. This claim is for unlawful retaliation in violation of Title VII, 42 U.S.C. Section 2000e-3 (a).

105. Title VII provides it is an unlawful employment practice for an employer to discriminate against any employee because the person opposed any practice made an unlawful employment practice by the Act, or because the individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act. 42 U.S.C. Section 2000e-3(a).

106. Phinney's protected Title VII activities include his informal and formal complaints to Defendant's managers, supervisors, and officials.

107. Phinney engaged in protected activity by:

(1) Submitting his first request to Defendant for a reasonable accommodation to the vaccine mandate and testing requirements on August 10, 2021.

(2) Submitting, through counsel, his second request to Defendant for a reasonable accommodation to the vaccine mandate and testing requirements on August 31, 2021.

(3) Submitting, through counsel, to Defendant, his requests for a reasonable accommodation to the testing requirement on September 13 and 29, 2021.

(4) Submitting, through counsel, to Defendant, his response to the Notice on February 22, 2022.

(5) Submitting, through counsel, to Defendant on March 3, 2022, a request for reconsideration of the suspension decision.

15

108. At all times, Defendant was fully aware of Phinney's protected Title VII activities.

109. Defendant's officials taking the material adverse actions against Phinney, including but not limited to Anderson, were fully aware of his protected Title VII activities.

110. Defendant retaliated against Phinney by subjecting him to continual, intentional, cumulative, increasingly severe, and materially adverse employment actions that might deter a reasonable person from engaging in protected activity under Title VII.

111. Defendant's series of adverse material actions include but are not limited to:

(1) Denying Phinney's first request for a reasonable accommodation.

(2) Asking Phinney the three Religious/Vaccine questions after he: (a) explained his sincerely held religious beliefs to Defendant; and (b) engaged in protected activity by requesting a religious accommodation to the vaccine and testing mandates.

(3) On January 20, 2022, threatening Phinney that his alleged failure to abide by the accommodations may result in discipline up to and including dismissal.

(4) Administering Phinney's accommodation in an arbitrary, careless, retaliatory, and discriminatory manner.

(5) Issuing the Notice of Contemplated Disciplinary Action, including careless and inaccurate allegations based on unclear, confusing, and arbitrary standards.

      (6) Issuing the Notice which threatened Phinney by informing him he could be subject to further discipline including dismissal.

      (7) Suspending Phinney for 80 hours.

      (8) Constructively discharging Phinney from employment.

112. A causal connection exists between Phinney's protected activities and the unlawful materially adverse employment actions taken by Defendant against Phinney.

113. Defendant, but-for Phinney's protected activities and opposition to discrimination, would not have taken the material adverse employment actions against him.

114. Defendant, contemporaneously with, and/or right after Phinney's protected activities, engaged in an intentional, calculated, and purposeful campaign of unlawful retaliation, subjecting him to intentional, cumulative, materially adverse actions.

115. The intentional, unlawful retaliation was created, perpetrated, and/or tolerated by Defendant's officials, managers, and employees.

116. Defendant's treatment of Phinney, considered in its totality and in a cumulative manner, as outlined in the above paragraphs of this claim and Complaint, is direct, intentional, and materially adverse action constituting unlawful retaliation and discrimination prohibited by Title VII.

117. Defendant's treatment of Phinney constitutes unlawful intentional retaliation and discrimination in violation of 2000e-3(a), and intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section 1981a.

## VII. **REQUEST FOR RELIEF**

WHEREFORE, Richard Phinney respectfully requests this Court to enter judgment in his favor and against Defendant on all claims asserted in this Complaint and Request for Jury Trial, and in addition, for the following relief:

(1) To enter a judgment for Phinney and against Defendant, finding Defendant's actions constitute continuing and intentional discrimination, as retaliation, in violation of Title VII.

(2) To award Phinney the remedies of damages for back pay, restored benefits, actual monetary damages, loss of wages, retirement contributions, all loss of income and monetary damages to which he is entitled under Title VII.

(3) To award Phinney compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future monetary losses, and all compensatory damages to which he is entitled under Title VII.

(4) To award Phinney reinstatement, or in the alternative, front pay, under Title VII.

(5) To award Phinney attorney fees and costs under Title VII.

(6) To award Phinney pre-judgment and post-judgment interest at the proper rate provided by law.

(7) To direct Defendant to take such affirmative relief steps as are necessary to ensure the effects of Defendant's unlawful employment practices are eliminated and do not continue to affect Phinney's employment opportunities.

(8) To award Phinney all other legal and equitable relief to which Phinney is entitled under any law that this Court considers just, equitable, and proper.

## VIII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. § 2000e-5, and 42 U.S.C. § 1981a (c)(1), and all applicable laws providing for a right to trial by jury, Phinney requests a jury trial of all claims and issues.

Dated: March 14, 2023.

Respectfully submitted,

*/s/ Steven L. Murray*
Murray Law, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO  80210
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

Plaintiff's Address:

6461 West Eldorado Place
Denver, CO 80227
    .